**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**
───────────────────────────────────

**UNITED STATES OF AMERICA,**

                **Plaintiff,**

                **v.**                        **06-CR-284S**

**JOSE LAO,**

                **Defendant.**
───────────────────────────────────

## REPORT, RECOMMENDATION AND ORDER

This case was referred to the undersigned by the Hon. William M. Skretny in accordance with 28 U.S.C. § 636(b)(1) for all pretrial matters and hear and report upon dispositive motions.

## PRELIMINARY STATEMENT

The defendant, Jose Lao, ("the defendant") is charged in a Superseding Indictment with having violated Title 21 U.S.C. §§ 846 (Count 1).  (Docket #128).  There are nine other co-defendants similarly charged, some of whom are also charged with having violated Title 21 U.S.C. §§ 841(A)(1) and 841(b)(1)(B) and Title 18 U.S.C. § 2. (Docket #128).

The defendant has filed a motion to suppress the use of evidence at trial that was obtained from the use of wire intercept orders issued by the Hon. William M. Skretny on October 25, November 23 and December 8, 2005 claiming that "there was

no probable cause to issue eavesdropping warrants" and there was a lacking of "necessity" to warrant the use of wire interceptions.  The defendant also argues that "the interception of electronic communications were not minimized and particularized to comply with the requirements of federal law governing the interception of electronic communications."  (Docket #136, ¶¶ 57-67).

The government has filed a response in opposition to the defendant's motion. (Docket #155).

Each of the defendant's claims will be separately addressed herein.

## DISCUSSION AND ANALYSIS

The facts set forth in this Court's Report, Recommendation and Order dated April 28, 2008 (Docket #198) are hereby incorporated by reference since the defendant participated in the evidentiary hearing upon which these facts are based and there is no need to restate them herein for purposes of addressing the defendant's motion to suppress evidence.

**(1)     The Probable Cause Issue**.

As the Second Circuit Court of Appeals has stated, "the standard for probable cause applicable to [18 U.S.C.] § 2518 is 'the same as the standard for a regular search warrant. Under *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), probable cause for a search warrant is established if the totality-of-

the-circumstances' indicate a probability of criminal activity.  *See id.* at 230-32, 103 S.Ct. 2317."  *United States v. Diaz*, 176 F.3d 52, 110 (2d Cir.) *cert. denied* by *Rivera v. United States*, 528 U.S. 875 (1999).

Basically, the defendant is requesting that a review of Judge Skretny's decision in issuing the Intercept Orders of October 25, November 23 and December 8, 2005 be made so as to conclude that such orders were improperly issued.  The role of this Court in conducting such a review is no different than that conducted by a court of appeals and therefore, the admonition of the Second Circuit Court of Appeals is appropriately applied in this process wherein the Court stated:

> "In reviewing a ruling on a motion to suppress wiretap evidence, we accord deference to the district court."  *Miller,* 116 F.3d at 663 (quoting *Torres*, 901 F.2d at 231).  Our role in reviewing the issuance of a wiretap order is not to make a *de novo* determination of the sufficiency of the applications, "but to decide if the facts set forth in the application were minimally adequate to support the determination that was made."  *Id.*

*United States v. Diaz,* 176 F.3d 52, 109 (2d Cir.), *cert. denied* by *Rivera v. United States*, 528 U.S. 875 (1999).

The defendant merely sets forth a conclusory claim that the contents of the affidavit of S.A. Yervelli, sworn to October 25, 2005, fails to put forth anything of substance to support a finding of probable cause for the issuance of the order of October 25, 2005.  He does the same with respect to the use of confidential informants as a basis for establishing probable cause by merely asserting that they "were inherently unreliable and suspect."  (Docket #136, ¶¶ 57-59).  He offers nothing further on the issue of probable cause as to the intercept orders of November 23 and

December 8, 2005.

> As the Court of Appeals for the Second Circuit stated:
>
> A plaintiff who argues that a warrant was issued on less than probable cause faces a heavy burden.  "Where [the] circumstances are detailed, where reason for crediting the source of the information is given, and when a magistrate has found probable cause, the courts should not invalidate the warrant by interpreting the affidavit in a hypertechnical, rather than a commonsense, manner. . . . [T]he resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants."  *United States v. Ventresca*, 380 U.S. 102, 109, 85 S.Ct. 741, 746, 13 L.Ed.2d 684 (1965).  In particular, where the officer requesting the search warrant relies on an informant, the magistrate's role is to examine the totality of the circumstances and to
>
>> make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.  And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for . . . conclud[ing]" that probable cause existed.
>
> *Illinois v. Gates,* 462 U.S. 213, 238-39, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983) (quoting *Jones v. United States*, 362 U.S. 257, 271, 80 S.Ct. 725, 736, 4 L.Ed.2d 697 (1960)); *see United States v. Feliz-Cordero*, 859 F.2d 250, 252-53 (2d Cir. 1988).

*Rivera v. United States*, 928 F.2d 592, 602 (2d Cir. 1991).

The defendant has failed to meet his burden in this regard.  The ninety-five (95) typewritten page affidavit of S.A. Yervelli sworn to October 25, 2005 sets forth in great detail, the circumstances of the investigation as well as the information obtained to date from confidential sources, authorized state intercept orders and physical surveillance.  As a result, it is hereby RECOMMENDED that defendant's

motion to suppress the evidence obtained by use of the intercept orders of October 25,
November 23 and December 8, 2005 be DENIED.


      **(2)    The Necessity Issue.**

      The defendant argues that the conclusory statements and the necessity
aspect of the applications were insufficient to allow the agents to utilize eavesdropping
in this instance and therefore, the evidence obtained by use of such intercept orders
should be suppressed.  (Docket #136, ¶ 64).


      The eavesdropping application and supporting affidavit of S.A. Yervelli of
October 25, 2005 did contain a detailed factual explanation of the traditional
investigative techniques that were used, including "the use of confidential sources,
controlled evidence purchases of illegal drugs, the attempted introduction of an
undercover officer, search warrants, pen registers, review of telephone toll records,
interviews and **physical surveillance.**"  (Emphasis added) (Government Exhibit 1, p.
77).  A detailed description was also given of those investigative techniques
"considered, but not deemed likely to succeed" and the reasons for such belief.
(Government Exhibit 1, pp. 77-92).


      There is no requirement that all traditional law enforcement investigative
techniques be exhausted prior to applying for a wire interception order.  *United States v.
Diaz*, 176 F.3d 52, 111 (2d Cir.) *cert. denied* by *Rivera v. United States,* 528 U.S. 875
(1999).  Nor is there any requirement "that any particular investigative procedures
[must] be exhausted before a wiretap may be authorized."  *United States v. Miller,* 116

F.3d 641, 663 (2d Cir. 1997), *cert. denied*, 524 U.S. 905 (1998); *United States v. Young*, 882 F.2d 1234, 1237 (2d Cir. 1987).

Since the holding in *United States v. Torres*, 901 F.2d 205 (2d Cir.), *cert. denied* 498 U.S. 906 (1990), addresses the issues raised by the defendant herein on the issue of whether 18 U.S.C. § 2518(1)(c) was complied with, it is worthwhile to sacrifice brevity and set forth that Court's ruling in detail.

> Section 2518(1)(c) requires that an application for such an interception shall include "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous. . . ." Similarly, section 2518(3)(c) requires the judge to whom an application for a wiretap is made to determine, as a condition of authorizing the tap, that "normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous. . . ."
>
> The application for the wiretap in this case was based upon a thirty-six page affidavit by DEA agent Timothy J. Sullivan dated May 27, 1987. Flores contends that when the application for a wiretap was made, traditional law enforcement methods had already achieved "extraordinary success . . . in penetrating the deepest reaches of the Torres Organization," and that the "affidavit utterly failed to establish, even on a superficial level, that less intrusive techniques had not been successful and could not be successful." In advancing this position, Flores points out that our decision in *United States v. Lilla*, 699 F.2d 99 (2d Cir. 1983), precludes the authorization of wiretaps based upon "generalized and conclusory statements that other investigative procedures would prove unsuccessful," *id*. at 104. Flores also argues that it does not suffice to show that a case belongs to some general class of cases which require wiretap investigation, citing *United States v. Kalustian*, 529 F.2d 585, 589 (9th Cir. 1975) (gambling case).
>
> We are unpersuaded, and conclude that the application in this case provided a sufficient basis for authorizing the Flores wiretap. Section 2518 "is simply designed to assure that wiretapping is not resorted to in situations where

traditional investigative techniques would suffice to expose the crime." *United States v. Kahn*, 415 U.S. 143, 153 n. 12, 94 S.Ct. 977, 983 n. 12, 39 L.Ed.2d 225 (1974).  As we have stated:

> "[T]he purpose of the statutory requirements is not to preclude resort to electronic surveillance until after all other possible means of investigation have been exhausted by investigative agents; rather, they only require that the agents inform the authorizing judicial officer of the nature and progress of the investigation and of the difficulties inherent in the use of normal law enforcement methods."

*United States v. Vazquez*, 605 F.2d 1269, 1282 (2d Cir. 1979) (quoting *United States v. Hinton*, 543 F.2d 1002, 1011 (2d Cir.), *cert. denied*, 429 U.S. 980, 97 S.Ct. 493, 50 L.Ed.2d 589 (1976)), *cert. denied*, 444 U.S. 981, 100 S.Ct. 484, 62 L.Ed.2d 408 (1979), 1019, 100 S.Ct. 674, 62 L.Ed.2d 649 (1980); *see also United States v. Fury*, 554 F.2d 522, 530 (2d Cir), *cert. denied*, 433 U.S. 910, 97 S.Ct. 2978, 53 L.Ed.2d 1095 (1977).

The role of an appeals court in reviewing the issuance of a wiretap order, furthermore, "is not to make a *de novo* determination of sufficiency as if it were a district judge, but to decide if the facts set forth in the application were minimally adequate to support the determination that was made." *United States v. Scibelli*, 549 F.2d 222, 226 (1st Cir.) (collecting cases), *cert. denied*, 431 U.S. 960, 97 S.Ct. 2687, 53 L.Ed.2d 278 (1977).  And, as the *Scibelli* court went on to say:

> [I]n determining the sufficiency of the application a reviewing court must test it in a practical and common sense manner.  The legislative history makes clear that section 2518(1)(c) is not designed to force the Government to have exhausted all "other investigative procedures".
>
> > "The judgment [of the district judge] would involve a consideration of all the facts and circumstances.  Normal investigative procedure would include, for example, standard

> > visual or aural surveillance techniques by law enforcement officers, general questioning or interrogation under an immunity grant, use of regular search warrants, and the infiltration of conspiratorial groups by undercover agents or informants. Merely because a normal investigative technique is theoretically possible, it does not follow that it is likely.  What the provision envisions is that the showing be tested in a practical and commonsense fashion.

> S.Rep. No. 1097, 90th Cong., 2d Sess., 1968 U.S.Code Cong. & Admin.News, p. 2190 (citations omitted).

> *Scibelli*, 549 F.2d at 226.

*Id.* at 231-232) (brackets included); *See also United States v. Diaz,* 176 F.3d 52, 111 (2d Cir.), *cert. denied* by *Rivera v. United States*, 528 U.S. 875 (1999).


Giving proper deference to Judge Skretny's review and acceptance of the ninety-five (95) page affidavit of Special Agent Yervelli sworn to October 25, 2005 in support of the application for the Intercept Orders and his decision to grant said applications and issue the orders in question, it is concluded that Judge Skretny "properly found that conventional investigative techniques had been exhausted and that alternatives to wire interception would be unlikely to succeed or would be too dangerous."  *Id. at* 111.  Therefore, it is RECOMMENDED that defendant's motion to suppress based on this claim be DENIED.

(3)    The "Minimization" Issue.

18 U.S.C. § 2518(5) provides that the "authorization to intercept . . . shall be conducted in such a way as to minimize the interception of communications not otherwise subject to interception under this chapter . . .."

Defendant's counsel merely speculates that the "minimization" requirements of the statute may not have been complied with.  (Docket #136, ¶ 63).  As a result, his argument is rejected at this point in time.  Nevertheless, for purposes of judicial economy, the holding of the United States Supreme Court on this issue is beneficial and is therefore, set forth herein.

In addressing this complex concept of "minimization," the United States Supreme Court has held that:

> The statute does not forbid the interception of all nonrelevant conversations, but rather instructs the agents to conduct the surveillance in such a manner as to "minimize" the interception of such conversations.  Whether the agents have in fact conducted the wiretap in such a manner will depend on the facts and circumstances of each case.
>
> We agree with the Court of Appeals that blind reliance on the percentage of nonpertinent calls intercepted is not a sure guide to the correct answer.  Such percentages may provide assistance, but there are surely cases, such as the one at bar, where the percentage of nonpertinent calls is relatively high and yet their interception was still reasonable.  The reasons for this may be many.  Many of the nonpertinent calls may have been very short.  Others may have been one-time only calls.  Still other calls may have been ambiguous in nature or apparently involved guarded or coded language.  In all these circumstances agents can hardly be expected to know that the calls are not pertinent prior to their termination.
>
> In determining whether the agents properly minimized, it is

also important to consider the circumstances of the wiretap.
For example, when the investigation is focusing on what is
thought to be a widespread conspiracy more extensive
surveillance may be justified in an attempt to determine the
precise scope of the enterprise.  And it is possible that many
more of the conversations will be permissibly interceptable
because they will involve one or more of the co-conspirators.
. . .

Other factors may also play a significant part in a particular
case.  For example, it may be important to determine at
exactly what point during the authorized period the
interception was made.  During the early stages of
surveillance the agents may be forced to intercept all calls to
establish categories of nonpertinent calls which will not be
intercepted thereafter.  Interception of those same types of
calls might be unreasonable later on, however, once the
nonpertinent categories have been established and it is
clear that this particular conversation is of that type.  Other
situations may arise where patterns of nonpertinent calls do
not appear.  In these circumstances it may not be
unreasonable to intercept almost every short conversation
because the determination of relevancy cannot be made
before the call is completed.

*Scott v. United States*, 436 U.S. 128, 140-141 (1978); *see also United States v. Principe*, 531 F.2d 1132, 1140 (2d Cir.), *cert. denied* 430 U.S. 905 (1976).

It is therefore RECOMMENDED that defendant's motion to suppress the

evidence on this issue be DENIED.

_____Therefore, it is hereby **ORDERED** pursuant to 28 U.S.C. § 636(b)(1) that:

_____This Report, Recommendation and Order be filed with the Clerk of the

Court.

**ANY OBJECTIONS** to this Report, Recommendation and Order must be

filed with the Clerk of this Court within ten (10) days after receipt of a copy of this

Report, Recommendation and Order in accordance with the above statute, Fed. R. Crim. P. 58(g)(2) and Local Rule 58.2.

The district judge will ordinarily refuse to consider *de novo*, arguments, case law and/or evidentiary material which could have been, but were not presented to the magistrate judge in the first instance.  *See, e.g., Patterson-Leitch Co., Inc. v. Massachusetts Municipal Wholesale Electric Co.*, 840 F.2d 985 (1st Cir. 1988).  **Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Judge's Order.**  *Thomas v. Arn*, 474 U.S. 140 (1985); *Wesolek, et al. v. Canadair Ltd., et al.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 58.2 of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority."  **Failure to comply with the provisions of Rule 58.2, or with the similar provisions of Rule 58.2 (concerning objections to a Magistrate Judge's Report, Recommendation and Order), may result in the District Judge's refusal to consider the objection.**

*S/ H. Kenneth Schroeder, Jr.*
**H. KENNETH SCHROEDER, JR.**
**United States Magistrate Judge**

**DATED:** **Buffalo, New York**
**June 3, 2008**